UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENDA R. LAWSON,<br><br>Plaintiff,<br><br>v.<br><br>MANDARICH LAW GROUP, LLP,<br><br>Defendant. | Case No. 1:18-cv-06918<br><br>Honorable Matthew F. Kennelly |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

NOW comes GLENDA R. LAWSON ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., responding to MANDARICH LAW GROUP, LLP's ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Defendant's Motion"), and in support thereof states as follows:

**I.   INTRODUCTION**

Plaintiff's Complaint sets forth sufficient allegations against Defendant for its violations of the Fair Debt Collection Practices Act ("FDCPA"). [*See* Dkt. 1]. Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(10), 1692f and 1692f(1) through the nature of a handful of collection letters which Plaintiff received from Defendant. [*Id.* at ¶¶ 28-32]. Plaintiff hereby withdraws her claims under 15 U.S.C. §§ 1692e(2) and 1692e(5), and 1692f(1).

At their core, Plaintiff's remaining claims stem from the fact that Defendant, a law firm whose principle purpose is the collection of debts, sends mass-produced collection letters to consumers attempting to collect upon debts. These mass-produced letters are deceptive because,

1

by virtue of sending a collection letter purportedly on behalf of certain attorneys, Defendant represents to unsophisticated consumers, that the letter was sent after the listed attorneys sufficiently reviewed the underlying account serving as the basis of such letter – a representation that is frequently false when a debt collector sends mass-produced collection letters. *See, Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).[1] Defendant asserts that Plaintiff has set forth only "wavering allegations [that] are only based on pure speculation and guesswork," however, Defendant's argument is unpersuasive. *See* Defendant's Motion, Exhibit A [Dkt. 26, p. 6]. Defendant overlooks the nature of Plaintiff's Amended Complaint and the facts asserted therein, as well as the nature of its collection letters, which reveal the automated process of Defendant's collection efforts, such that Plaintiff has set forth plausible claims under the FDCPA. *Id.* at 1321 ("No mass mailing technique is permissible--regardless of how effective it might be--if that technique constitutes a false, deceptive, or misleading communication."); *See also, Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989).[2] As such, Plaintiff's Amended Complaint sets forth plausible claims under the FDCPA such that Defendant's Motion should be denied.

## II.    STATEMENT OF FACTS

A few years ago, Plaintiff defaulted on her credit card accounts with Capital One, N.A. ("Capital One") and Citibank, N.A. ("Citibank") (collectively, "subject debts"). *See* Plaintiff's Amended Complaint, ¶ 9 [Dkt. 21]. The subject debts were charged off in 2017 and were subsequently purchased by Cavalry SPV I, LLC ("Cavalry"). [*Id.* at ¶¶ 10, 13]. Cavalry then

---

[1] In *Clomon,* the Second Circuit noted that, "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent" and that such attorney "signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent," adding that "[i]n a mass mailing, these implications are frequently false"). *Id.*

[2] In *Crossley,* the Third Circuit noted that "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's [correspondence] than to a debt collection agency committing the same practice." *Id.*

assigned the subject debts to Defendant for collection. [*Id.* at ¶ 14]. On or about January 24, 2018, Defendant sent Plaintiff a dunning notice in its attempt to collect upon the Capital One debt. [*Id.* at ¶¶ 9, 15]. Defendant's letterhead states, "MANDARICH LAW GROUP, LLP, Attorneys at Law." [Dkt. 26-1, pp. 2-3]. The very top of Defendant's letter reflects information regarding the debt, and beside that, Defendant lists only two of its attorneys, namely "Christopher D. Mandarich," and "Ryan E. Vos." [*Id.*].

Defendant sent an identical dunning notice to Plaintiff on or about June 13, 2018, with regard to the Citibank debt. [Dkt. 21, ¶ 16]. The sole difference between Defendant's two dunning notices is the information regarding the specific accounts. [*Id.* at ¶ 19]. Otherwise, the letters are formulaic in nature, as they both include a barcode at the very bottom. [*Id.* at ¶ 30]; *see also,* [Dkt. 26-1, pp. 2, 4].

Defendant purposefully lists the same two attorneys in both letters, despite the fact that Defendant employs countless attorneys throughout the country.[3] In doing so, it is clear that these are the two attorneys who are handling Plaintiff's accounts, as the letter also designates their jurisdictions of admission, specifically mentioning that Attorneys Mandarich and Vos are licensed to practice in California, the state in which Plaintiff resides. [Dkt. 26-1, pp. 2, 4]. Thus, even though both letters are signed as "Mandarich Law Group, LLP," an unsophisticated consumer would naturally believe that the letters were reviewed and sent, by or on behalf of, the two attorneys reflected in the letters. [Dkt. 21, ¶ 43].

On or about July 19, 2018, Plaintiff received a "Notice of Intention to Sue" from Defendant, regarding the Citibank account. [*Id.* at ¶ 23]. In this letter, Defendant lists attorneys, "Christopher

---

[3] While Defendant, on its website, does not list the number of attorneys it employs, upon information and belief, Defendant employs dozens of attorneys throughout the country, as evidenced by Defendant's July 19, 2018 letter, which lists 13 different attorneys who are licensed to practice law in 15 different states. [Dkt. 21, ¶¶ 24-25].

D. Mandarich, Michael D. Mandarich, John C. Bonewicz, Ryan E. Vos, Anthony F. Porto, Veronica M. Barisich, Christina M. Milien, William Boaz, William T. Sali, Angela Burmeister, Thomas M. McGreal, Crystal Flynn, and Faye Carroll." [*Id.* at ¶ 24]. These attorneys practice and reside in various states throughout the country, making it highly implausible that every aforementioned individual conducted a meaningful review of the letter prior to it being sent. [*Id.* at ¶ 26].

Beyond the nature of the letters themselves, the current creditor of the subject debts – Cavalry – is one of the largest debt buyers in the United States. [*Id.* at ¶ 27]. As a result, it stands to reason that Cavalry has a proportionally large number of accounts that are subjected to collection activities by third party debt collectors such as Defendant, and because Cavalry clearly works with Defendant on a regular basis, it follows that Defendant is regularly sending hundreds of collection letters to consumers on a daily basis. [*Id.* at ¶¶ 27-28]. As such, the attorneys that appear in Defendant's letters allow their names to be included on hundreds of such collection letters per day without engaging in a meaningful review of the underlying accounts prior to determining the veracity of the representations. [*Id.* at ¶ 29]. Yet, an unsophisticated consumer reads such a letter, and believes that it was sent, and reviewed by, the attorneys listed therein, which inherently places a greater sense of urgency and intimidation upon such a consumer. *See Avila v. Rubin,* 84 F.3d 222, 228-30 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking").

Furthermore, a series of complaints have been lodged against Defendant, both in federal court and with the CFPB. [Dkt. 21, ¶ 32]. These complaints demonstrate a problematic course of

4

conduct engaged in by Defendant which seemingly could have been avoided had Defendant engaged in a meaningful review of the accounts it attempts to collect upon prior to initiating collection activity. [*Id.* at ¶¶ 32-33].

### III.     LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510,517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010).

Generally, matters outside the pleadings may not be considered on a motion to dismiss. *Albany Bank & Trust Co. v. Exxon Mobile Corp.,* 310 F.3d 969, 971 (7th Cir. 2002). However, the Seventh Circuit has held that documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *Id.*; *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). Dismissal is only warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80

(1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

For purposes of claims brought under the FDCPA, courts have held that since it is a strict liability statute, "debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009)." "The Fair Debt Collection Practices Act is an extraordinarily broad statute" and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, . . . we construe its language broadly, so as to effect its purpose."). A false representation can still lead to liability under § 1692e even if the act is unintentional. *Turner v. J.V.D.B. Assocs.*, 330 F. 3d 991, 998 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F. 3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)).

In situations involving determinations as to whether debt collection letters violate the FDCPA, the Seventh Circuit has "cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law . . . because 'district judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects.'" *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 759 (7th Cir. 2006) (quoting *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 501-03 (7th Cir. 1999)); *see also, Carter v. First Nat'l Collection Bureau, Inc.,* 135 F. Supp. 3d 565, 573 (discussing that district court judges should act with caution when determining how

an unsophisticated consumer would read a particular collection letter). "'[W]hat seems pellucid to a judge, a legally sophisticated reader, may be opaque' to the unsophisticated consumer." *Id.*

IV. **ARGUMENT**

    A. **Plaintiff has set forth plausible claims against Defendant under 15 U.S.C. § 1692e, e(3), and e(10).**

The goal of the FDPCA is to eliminate abusive debt collection practices. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 577 (2010). "A debt collection letter on an attorney's letterhead conveys authority and credibility" which creates an inherent intimidation in such correspondence. *Crossley,* 868 F.2d at 570. "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's [correspondence] than to a debt collection agency committing the same practice." *Id.* When a collection letter is sent on attorney letterhead in a mass produced fashion, courts have repeatedly found that such letters violate 15 U.S.C. §§ 1692e, e(3), and e(10) given the misrepresentation as to the extent of attorney involvement in the decision to send the letter. *See, Clomon,* 988 F.2d at 1320-21.

The leading case on whether mass-produced collection letters sent by an attorney violate the FDCPA is the Second Circuit case of *Clomon v. Jackson.* In *Clomon* – which has been adopted by the Seventh Circuit[4] – the Second Circuit found that mass mailed collection letters purportedly sent by an attorney constituted a violation of 15 U.S.C. §§ 1692e, e(3), and e(10). *Clomon,* at 1321. In reaching this holding, the Second Circuit stated:

> It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets boundaries within which debt collectors must operate. No mass mailing technique is permissible . . . if that technique constitutes a false, deceptive, or misleading communication. As we

---
[4] *See Avila v. Rubin,* 84 F.3d 222, 228 (7th Cir. 1996); *see also, Boyd v. Wexler,* 275 F.3d 642, 644 (7th Cir. 2001).

7

> have found, the use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. We have also found that the use of an attorney's signature implies – at least in the absence of language to the contrary – that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature[5] will comply with the restriction imposed by §1692e.

*Id.* As *Clomon* suggests, whether and to what extent a collection letter that is sent on behalf of an attorney was disseminated as a result of a mass-mailing or otherwise automated process demonstrates that there was a violation of § 1692e, e(3), as well as e(10).

The Seventh Circuit has cited the *Clomon* decision with wide approval. In *Avila v. Rubin,* 84 F.3d 222, 228-30 (7th Cir. 1996), the Seventh Circuit adopted the reasoning of the Second Circuit in finding that a mass-produced collection letter sent by an attorney violated the FDCPA. In so doing, the Seventh Circuit stated: "*Clomon* establishes that an attorney sending dunning letters must be *directly and personally involved* in the mailing of the letters in order to comply with the strictures of the FDCPA." *Id.* at 228 (emphasis added). "This may include reviewing the file of individual debtors to determine if and when a letter should be sent or approving the sending of letters based on the recommendations of others." *Id.* The court furthered the direction provided by *Clomon* when it stated "*Clomon* concluded that 'there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by section 1692e." *Id.* at 228 (citing *Clomon,* 988 F.2d at 1321).

---

[5] While the attorneys listed in Defendant's letters did not actually sign the letter, by purposefully including particular attorneys on each letter, an unsophisticated consumer would undoubtedly attribute those letters as being sent by, or on behalf of, the attorneys listed in those letters.

8

The *Avila* court went on to provide meaningful guidance about the nature of collection letters which are sent by attorneys. The Seventh Circuit stated:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. That's the essence of the connotation that accompanies the title of "attorney." A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word "attorney" in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards.

*Id.* at 229. Therefore under Seventh Circuit precedent, Defendant, as a debt collection law firm seeking to utilize the names of its attorneys in its debt collection process, has a responsibility to ensure that an attorney has become professionally involved in the debtor's file prior to using such attorney's name in the collection letter. Other Seventh Circuit cases follow this same line of reasoning. For instance, in *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002), the U.S. Court of Appeals for the Seventh Circuit affirmed the district court's judgment that the attorney did not use exercise legal discretion or have meaningful involvement in the collection process. The Court there opined, "Attorney letters prepared en masse are frequently false for want of such judgment. In order to avoid that falsehood, the attorney must have genuine involvement in the

9

process through which the letter was sent to the debtor." *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002). Furthermore, in *Knack-Toms v. Meyer Njus Tanick, PA*, 345 F. Supp. 3d 1033, 1038 (N.D. Ill. 2018), the Honorable Judge Philip G. Reinhard found an argument nearly identical to Defendant's here to be "clearly at odds with *Nielsen*," as the "'attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action.' Under *Nielsen*, the representation of 'meaningful review' is implicit in the letter being on an attorney's letterhead and bearing an attorney's signature and, therefore, no explicit statement that such a review occurred is required for the representation to have been made." *Knack-Toms,* 345 F. Supp. 3d at 1038. Based on the nature of the instant action, it should be clear that Defendant, through its mass-produced campaign of collection letters, has failed to meet this responsibility.

Defendant argues that, "Contrary to Plaintiff's assertion, none of the Letters are signed by any attorney, which connotate a review by that individual." [Dkt. 26, p. 4]. While Plaintiff acknowledges that the letters were signed by the actual law firm, and not the individual attorneys, by purposefully listing specific attorneys in its letters (as well as the placement of these attorneys' names on the letters), Defendant was clearly indicating that the letters were sent on behalf of those designated attorneys. Defendant attempts to argue around that, condescendingly stating that, "someone even with only rudimentary knowledge about the financial world recognizes that law firm letterhead routinely contains the names of various lawyers in a firm." *Id.* This argument does not apply here, as it is clear that the names of Defendant's attorneys are ***not*** listed in the letterhead. [Dkt. 26-1, pp. 2, 4]. Rather, in the January 24, 2018 and June 13, 2018 letters, the names of Defendant's two attorneys are listed beside the information regarding the subject debt. Defendant may argue that it included those specific attorneys as they are licensed in the state of California,

10

and the debtor, Plaintiff, is a California consumer. This argument would be disingenuous however, because in its July 19, 2018 letter, Defendant clearly includes attorneys that are ***not*** licensed in the state of California. [Dkt. 26-1, p. 6]. Defendant then brings in the ABA Rule of Professional Responsibility 7.5(b),[6] however, this rule applies to "Firm Names and Letterheads," which again, does not apply here, as the January 24, 2018 and June 13, 2018 letters list the attorney names beneath the letterhead, right beside the information regarding the respective debts. In addition, there is no language in the Rule requiring a law firm to place the names of its attorneys on its letterhead, as the Rule clearly states that a law firm "may" do so.[7]

Defendant deliberately chose to include the two attorneys' names in its first two letters to lead Plaintiff, and the unsophisticated consumer, into believing that the letter was sent from, and reviewed by, the listed attorneys. As evident by *Clomon* and *Avila,* by virtue of including the names of *two* attorneys in the collection letters, doing so constituted a representation that *both* attorneys engaged in a meaningful review of Plaintiff's file prior to sending the collection letter. This misrepresentation *alone* states a plausible claim under 15 U.S.C. § 1692e and e(10)[8] – claims which Defendant fails to mention throughout the entirety of its Motion.

In its Motion, Defendant completely mischaracterizes Plaintiff's Amended Complaint, stating that Plaintiff's allegations regarding "multitude of complaints that have been filed against Defendant in federal courts throughout the country, as well as with the Consumer Financial Protection Bureau," are "unsubstantiated," and are not connected with Defendant's alleged lack of

---

[6] This rule states, "(b) A law firm with offices in more than one jurisdiction ***may*** use the same name or other professional designation in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located." ABA Rule of Professional Responsibility 7.5(b) (emphasis added).
[7] *See, supra,* n.6.
[8] Both of these provisions of the FDCPA generally govern the utilization of deceptive or misleading tactics in the collection of debts. As such, even if the firm's signature does not demonstrate a lack of attorney review, the letters are deceptive to the extent they represent that the letters have been reviewed by the listed attorneys, leading to confusion as to the extent of attorney involvement in the sending of the letter.

attorney involvement. [Dkt. 26, pp. 4-5]. However, these facts were gathered through public sources, as in PACER, as well as the Consumer Financial Protection Bureau's website, which Plaintiff included in her Amended Complaint. In addition, Plaintiff's Amended Complaint specifically states that, "These complaints elucidate a problematic course of conduct (e.g., attempting to collect upon an incorrect consumer, attempting to collect an incorrect amount, attempting to collect money exempt from collection, failing to provide sufficient information regarding the underlying debt, threatening to sue for time-barred debts, etc. etc.) which seemingly would or could have been avoided had Defendant's attorneys meaningfully reviewed the correspondence." [Dkt. 21, ¶ 33]. The errors Defendant has made are probative of the fact that its collection processes, all of which involve attorneys collecting on debts, commit errors that could and should have been avoided had an actual attorney engaged in a meaningful review. Furthermore, such facts are not the *sole* basis of Plaintiff's allegations. They are merely a piece in the overarching narrative – that Defendant sends collection letters to consumers absent meaningful attorney involvement.

Beyond Plaintiff's Complaint, a review of the letter itself demonstrates that there was a certain amount of automation that went into its generation. The collection letter contains a barcode at the bottom of the letters. [Dkt. 26-1, pp. 2, 4, 6]. The use of barcodes generally is designed to provide a way to allow some sort of machine to extract data from a particular thing merely by scanning the barcode. As such, Defendant's use of a barcode in its collection letter gives rise to a reasonable inference that the use of such barcode was done in furtherance of Defendant's automated collection process and its ability to more readily track the mass-amount of collection letters it sends to consumers.

Taking all of the above facts and the inferences derived therefrom, the Court should find that Plaintiff has plead sufficient factual allegations giving rise to a plausible claim under §§ 1692e, e(3), and e(10). Defendant's reliance on *Barata* should be deemed unavailing, given the significant differences between the extent of the facts plead in those cases when compared to the instant matter. "[W]hether an attorney's lack of meaningful involvement in the collections process violates the FDCPA depends on the facts and circumstances of the individual case." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.,* 114 F. Supp. 3d 1342, 1368 (N.D. Ga. 2015) (quoting *Tourgeman v. Collins Fin. Servs., Inc.,* 2011 U.S. Dist. LEXIS 81070, at *9 (S.D. Cal. July 26, 2011). Here, Plaintiff advances significantly more factual assertions regarding the letters themselves, as well as Defendant's automated collection processes, which more conclusively establish the plausibility that Defendant's mass produced collection letters were sent absent sufficient attorney review. As the Honorable Judge Philip G. Reinhard stated in *Knack-Toms*, "*Barata* found that in order to state a plausible claim, the complaint 'would have to give some notion of how many letters were produced, how many attorneys produced them, and the length of time involved.'" *Knack-Toms,* 345 F. Supp.3d at 1039. Just as the plaintiff did in *Knack-Toms*, Plaintiff here similarly alleges that Defendant sends hundreds of letters on a daily basis, and includes several facts which illustrate the automation of Defendant's collection efforts. Accordingly, as the court stated in *Knack-Toms,* the application of *Barata* in these circumstances would be in conflict with *Swanson* v. *Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (To meet the pleading requirements of Fed. R. Civ. P. 8(a)(2) all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief."). *Knack-Toms,* 345 F. Supp. 3d at 1038.

In sum, the facts set forth in Plaintiff's Amended Complaint underscore that Plaintiff has set forth a plausible FDCPA claim under §§ 1692e, e(3), and e(10) stemming from the automated nature of Defendant's collection processes and the lack of sufficient attorney review that went into its collection letters. Plaintiff's Amended Complaint should not be dismissed because "it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling,* 58 F.3d at 297. Therefore, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

### B. Plaintiff has set forth a plausible claim against Defendant under 15 U.S.C. § 1692f.

In her Amended Complaint, Plaintiff has alleged that Defendant engaged in unfair conduct, as "It is undoubtedly abusive for Defendant, a law-firm debt collector, to falsely suggest that its collection letters were sent after being reviewed by Defendant's attorneys. This abusive debt collection practice has the impact of instilling an undue sense of urgency in consumers – an injury which the FDCPA was designed to redress." [Dkt. 21, ¶ 54]. Defendant maintains that "Plaintiff's Claims under §1692f and f(1) are identical to its claims under §1692e and as such, do not deserve independent discussion," however, this is simply untrue. [Dkt. 26, p. 10]. Luckily for the parties here, *Knack-Toms* addressed this exact issue, where the defendant there also argued that the plaintiff could not maintain a claim under Section 1692f based on the same facts on which she made her Section 1692e claim. *Knack-Toms,* 345 F. Supp. 3d at 1040. Judge Reinhard ruled that, "what claims can be proved and what relief is available or duplicative under the FDCPA must await later determination, possibly on summary judgment." *Id.* Similarly here, Plaintiff has set forth sufficient facts in her Amended Complaint to satisfy the liberal pleading requirements, and thus, Defendant's argument is premature under at the 12(b)(6) stage.

### V. CONCLUSION

As demonstrated at length herein, there are ample facts that the Court can consider which demonstrate that Defendant's collection efforts towards Plaintiff involved the sending of a mass-produced collection letters, purportedly sent on behalf of specific attorneys, absent such attorneys' meaningful review. Plaintiff's Amended Complaint presents sufficient factual allegations which, when taken as true, and drawing all reasonable inferences therefrom in Plaintiff's favor, illustrate that Plaintiff has stated plausible claims against Defendant for violations of the FDCPA pursuant to 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 1692f. Plaintiff's Amended Complaint is well plead and Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion in its entirety. Alternatively, in the event the court finds that dismissal is warranted, Plaintiff asks that this Court allow Plaintiff leave to amend her Amended Complaint. *See Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997) (In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile).

WHEREFORE, Plaintiff, GLENDA R. LAWSON, respectfully requests this Honorable Court enter an order denying Defendant's Motion in its entirety and for any other relief just and appropriate.

Dated: March 5, 2019                                  Respectfully submitted,

s/ Taxiarchis Hatzidimitriadis
Taxiarchis Hatzidimitriadis, Esq. #6319225
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Plaintiff, certifies that on March 5, 2019, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** to be served electronically via CM/ECF system on:

MESSER STRICKLER, LTD.
Kevin S. Borozan
Nicole M. Strickler
225 W. Washington St., Suite 575
Chicago, IL 60606
kborozan@messerstrickler.com
nstrickler@messerstrickler.com

Respectfully submitted,

s/ Taxiarchis Hatzidimitriadis
Taxiarchis Hatzidimitriadis