**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GLENDA R. LAWSON )
)
     Plaintiff, )
) Case No.: 1:18-cv-06918
v. )
)
MANDARICH LAW GROUP, LLP )
)
     Defendant. )

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS

Defendant, Mandarich Law Group, LLP, ("MLG") hereby submits its reply in support of its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in support of which, states as follows:

**ARGUMENT**

**I.     Plaintiff Misinterprets Defendant's Argument in Favor of Dismissal.**

Plaintiff relies extensively on *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) in explaining that letters sent *en mass* can violate the FDCPA. However, Defendant is not arguing that letters sent *en mass* are exempt from the purview of the FDCPA. Defendant is arguing that merely alleging mailing *en mass*, without more, is insufficient to plausibly suggest that Defendant failed to review her account prior to sending the letter.

In *Clomon*, the Second Circuit found the mass mailed letters of the appellant, a solo practitioner employed part-time by the debt collector, violated § 1692e given the language therein, not simply because they were mass-mailed. *See* 988 F.2d at 1321. While it certainly stated "[n]o mass mailing technique is permissible – regardless of how effective it might be – if that technique constitutes a false, deceptive, or misleading communication." *See* Dkt. 29, p. 2;

1

*Clomon*, 988 F.2d at 1321, *Clomon* does not stand for the proposition that a debt collector violates the FDCPA simply by utilizing an automated process or mass mailing technique for a collection letter. The Second Circuit did not merely base its opinion on the fact that the appellant's letters were mass-mailed. On the contrary, the majority of the opinion is with regard to the specific language within the letters, and the Court makes it clear that said language constituted false, deceptive or misleading communications in violation of § 1692e, <u>not</u> the fact that they were mass-mailed. *Id*.

In fact, the letters on which the Second Circuit based its decision are distinct from the Letters here. The most glaring dissimilarity is that, unlike the letters in *Clomon*, none of the Letters at issue here are signed by any MLG attorney. The presence of a facsimile attorney signature on the letters in *Clomon* was a significant factor in the Court's holding, a fact acknowledged by Plaintiff in her opposition. *See* Dkt. 29, p. 2, n.1 and p.8. Such an indication could, along with other information, plausibly suggest that the attorney was not meaningfully involved in the review of the account. But, such is not the case here.

The important point--- which Plaintiff misses--- is that she has pointed to few facts to establish that MLG did not review her account prior to sending the letter. Essentially, Plaintiff argues that alleging letters to be sent *en mass* is enough to plausibly allege that no attorney review was conducted relative to the debt. While such a conclusion is certainly *possible*, without more it is not plausible. And, unlike Plaintiff's argument that possibility is enough, it is plausibility that matters.[1] As a matter of practicality, whether or not a letter template on each account has very little to do with whether or not an attorney reviewed the account in a creditors' rights firm. Assuming as such would certainly open the flood gates of litigation to every

---

[1] Plaintiff cites to *Graehling v. City of Lombard*, 58 F.3d 295, 297 (7th Cir. 1995) for the proposition that possibility is enough. *Graehling*, however, was decided prior to the Supreme Court's decisions in *Bell Atlantic Corp v. Twombly* and *Ashcroft v. Iqbal* and plainly cites the wrong standard.

creditors' rights law firm, which would be subject to a claim just because it uses templates for correspondence. Attorneys can review accounts and then approve them for a particular letter template. In short, merely alleging the use of templates and a large number of letters sent over time indicates very little about the amount of attorney review.

In contrast, this Court should find that more is required to state an effective "meaningful involvement" claim. For example, allegations that a complaint filed was procedurally improper, or that some piece of information concerning the debt was inaccurate, would be more indicative of a failure to review. *See, e.g.*, *Satran v. LVNV Funding, LLC,* 2018 U.S. Dist. LEXIS 92479, 2018 WL 2464486, at *7 (W.D. Wis. June 1, 2018) (factual allegations that "the complaint was procedurally improper and the attorney who signed the complaint was attorney of record in an unusually large number of cases . . . suggest[ed] that she was not applying her professional judgment to each case" and stated a plausible claim for relief under § 1692e(3)). Under such circumstances, one could reasonably, and plausibly conclude, that a proper review was not conducted. Plaintiff can point to nothing about the information provided in the letter, or her dealings with MLG, that would suggest that MLG was not meaningfully involved in the collection of her debt. Merely pointing purported mass mailings, without more, should be insufficient.

Likewise, the fact that MLG has received complaints regarding other un-related debt collection activity has nothing to do with Plaintiff, or her claims. This Court, through its own docket, can take judicial notice that collection law firms are routinely sued under the FDCPA. Those suits are not necessarily due to any true violation of the law. But regardless, the question in this case is not relative to other consumers, but relative to Plaintiff. Defendant's acts relative to other debtors, when it has never been found to not have been meaningfully involved with *any*

3

account, is completely irrelevant.

Plaintiff also appears to make much of the fact that the names of MLG attorneys are not on the letter's heading but placed beside the information regarding the subject debt. Dkt. 29, p. 10. Plaintiff's argument, however, ignores the definition and routine use of the term letterhead, which is akin to preprinted stationary[2]. Only enterprising consumer counsel, not the unsophisticated consumer, would rationally assume that every attorney listed in stationary performed an attorney review of the circumstances of the consumer's account. *See Wahl v. Midland Credit Mgmt.*, 556 F. 3d 643, 645 (7th Cir. 2009) (the unsophisticated consumer, while naïve and trusting, is not a "dimwit."); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (the unsophisticated consumer "is wise enough to read collection notices with added care, [is possessed of] reasonable intelligence, and is capable of making basic logical deductions and inferences.").

Moreover, Plaintiff's opposition completely fails to respond to MLG's well-supported arguments regarding materiality. Specifically, MLG argued that only material[3] statements are actionable under the FDCPA, and it is of no matter to the unsophisticated consumer whether one lawyer or ten lawyers at a law firm review the circumstances of her account. Plaintiff's claims fail for lack of materiality as the unsophisticated consumer would not take a different course of action if only one attorney, as opposed to more, were listed on the letterhead. Dkt. 26, p. 7.

By ignoring these arguments, Plaintiff waives her right to contest them. *See, Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that

---

[2] This Court can take judicial notice of the fact that "letterhead" is defined as 1: stationary printed or engraved usually with the name and address of an organization; 2: the heading at the top of a letterhead. *Letterhead*, Meriam-Webster (online) https://www.merriam-webster.com/dictionary/letterhead (last visited March 15, 2019).

[3] Statements are "material" within the sense of §1692e if it has "the ability to influence a consumer's decision". *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011).

rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)).  Plaintiff's concession means this Court must grant MLG's motion as as to each waived argument and dismiss those claims as warranted. *See*, *Id.* ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." (quotation marks omitted)); *see also*, *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver…This leaves us no choice but to accept [defendant's] assertions—supported as they are by pertinent legal authority—that the allegations in the [plaintiffs'] complaint do not entitle them to relief.").  Thus, by failing to offer any response to MLG's arguments regarding the materiality of her claims, Plaintiff's Amended Complaint warrants dismissal.

## II.     Plaintiff's Tag-Along § 1692f Claim Fails for Another Reason

Plaintiff posits that *Knack-Toms* is the leading precedent regarding duplicative claims under § 1692f. *See* Dkt. 29, pp. 14-15.  Contrary to Plaintiff's assertion, the majority view in the Seventh Circuit and beyond that a Plaintiff may not prove a 1692f claim merely by pointing to the letter's purportedly misleading nature, when she also makes the same claim relevant to other sections of the FDCPA. *See, e.g., Al v. Van Ru Credit Corp.,* 2019 U.S. Dist. LEXIS 6321, at *9 (E.D. Wis. Jan. 14, 2019)*; Vanhuss v. Kohn Law Firm S.C.,* 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015) (collecting cases)*; Rush v. Portfolio Recovery Assocs.* LLC, 977 F. Supp. 2d 414, 432 (D.N.J. 2013) ("Courts have therefore determined that § 1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the

FDCPA[.]"); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009) ("However, a claim of a violation of §1692f is deficient if it 'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.'"). Importantly, while Knack-Toms did decide both 1692e and f claims were available, it contained no analysis whatsoever and merely concluded that "what claims can be proved and what relief is available or duplicative under the FDCPA must await a later determination." *Knack-Toms,* 345 F. Supp. 3d 1033, 1040 (N.D. Ill. 2018). Such an approach is not only inefficient but fails to consider the aforementioned case law. In short, while Plaintiff attempts to state a violation of § 1692f for conduct she also claims violates § 1692e, her claim fails since no conduct is identified outside of that which would violate § 1692e. Accordingly, there can be no plausible claim for relief and Plaintiff's Amended Complaint must be dismissed with prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant, Mandarich Law Group, LLP, respectfully requests that this Honorable Court dismiss Plaintiff's Amended Complaint with prejudice and for such further and other relief this Honorable Court deems just.

Dated: March 19, 2019                     Respectfully submitted,

                                          By:  */s/ Kevin S. Borozan*
                                          Kevin S. Borozan
                                          Messer Strickler, Ltd.
                                          225 W. Washington St., Suite 575
                                          Chicago, IL 60606
                                          (312) 334-3474 (direct)
                                          (312) 334-3473 (fax)
                                          kborozan@messerstrickler.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2019, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

By: /s/ Kevin S. Borozan
Kevin S. Borozan
Messer Strickler, Ltd.
225 W. Washington St., Suite 575
Chicago, IL 60606
(312) 334-3474 (direct)
(312) 334-3473 (fax)
kborozan@messerstrickler.com